ZEITLOW, Respondent, vs. SWEGER, Appellant.

*January 9—February 6, 1923.*

*Automobiles: Negligence: Traveling on left side of road: Trial: Special verdict: Issues raised by complaint and counterclaim: Separate statement: Remarks of trial judge: Adverse examination: Attorneys.*

1. In an action to recover damages sustained in an automobile collision the better practice is to submit to the jury the issues raised by the complaint and by a counterclaim of the defendant in separate questions. [Whether there was prejudicial error in submitting a verdict in the form ordinarily used in negligence cases where there is no counterclaim is not decided, as it appears in this case that defendant was guilty of negligence as a matter of law, and hence could not have recovered on his counterclaim.]

2. The driver of an automobile, traveling eastward at a speed of at least twenty-five miles per hour when he struck another car traveling westward at about twelve miles per hour and within a few feet of the north side of the road, was, under the facts of this case, negligent as a matter of law.

3. It is not good practice for a trial court to indicate to the jury, by remarks during the trial, his view of the case on the facts, irrespective of whether or not he intends to submit the issues of fact to the jury.
4. An attorney who has taken part in an adverse examination of his client which has later been transcribed into long-hand has a right to inspect such examination, point out any defects therein, and advise his client whether or not he should sign it, before the latter may be ordered to sign it and the deposition be read in evidence.
5. Where the evidence shows defendant negligent as a matter of law and that the jury were justified in finding plaintiff free from contributory negligence, errors of procedure not affecting the question of damages cannot result in reversal of a judgment for plaintiff.

APPEAL from a judgment of the circuit court for Vernon county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

Action to recover damages sustained on a county highway in an automobile collision October 10, 1920. Plaintiff was driving west and defendant east. They collided at or near a somewhat sudden hill or elevation in the road. Plaintiff claims the collision occurred on the north side of the traveled track with his car about two feet from the north bank. Defendant claims it took place near the center of the road and that he was blinded by a cloud of dust. He put in a counterclaim for damages alleging that plaintiff was negligent and that he was not. The court submitted to the jury a special verdict requiring them to find (1) Was the defendant negligent? (2) If so, was his negligence the proximate cause of the collision? (3) Was plaintiff guilty of contributory negligence? and (4) plaintiff's damages. The jury answered all the questions favorably to plaintiff, and from a judgment entered accordingly the defendant appealed.

*J. Henry Bennett* of Viroqua, for the appellant.

For the respondent there was a brief by *C. W. Graves* of Viroqua and *R. B. Graves* of Sparta, and oral argument by *C. W. Graves*.

VINJE, C. J.    It is claimed by the defendant that the court erred in not submitting the issue raised by the counterclaim to the jury, the special verdict being no more than the usual verdict in a negligence case where there is no counterclaim.    On behalf of the plaintiff it is urged that the verdict submitted was adequate and fairly presented the issues to the jury, because if it found defendant negligent and plaintiff free from contributory negligence all the issues as to negligence would be passed upon by the jury.    This technically is true where, as here, each side claims the other was negligent and each claims that he was free from negligence, and there are, in fact, two causes of action, one on the complaint, the other on the counterclaim.    We deem it the fairer and better practice to submit the issues raised by each cause of action separately to the jury.    Upon the plaintiff's cause of action the jury should have been required to find upon the issues (1) defendant's negligence; (2) proximate cause; (3) plaintiff's contributory negligence; and (4) plaintiff's damages.    Upon defendant's cause of action the jury should have likewise passed upon (1) plaintiff's negligence; (2) proximate cause; (3) defendant's contributory negligence; and (4) defendant's damages.    In presenting the issues in this way, no claim can justly be made that the court assumes that only one of the parties has a cause of action, and these questions, if answered, will completely dispose of the issues as to the negligence of each.

In the present case it does not become necessary to determine whether or not the manner in which the issues were presented to the jury constituted prejudicial error, because we all reach the conclusion that the defendant, as a matter of law, was guilty of negligence, and therefore it was not necessary to submit to the jury the issues presented by the counterclaim.    We reach this conclusion because the evidence shows almost without conflict that the accident occurred upon the north side of the road at a place where

plaintiff's car was within a very few feet of the north side of the traveled track, so that the defendant must have been a considerable distance to the north or left of the center of the road when the collision occurred. It is undisputed that plaintiff's car was traveling about twelve miles per hour. The evidence as to the speed of the defendant is somewhat in conflict. He testified that he was traveling about twenty-five miles an hour. Plaintiff's witnesses say that he was traveling at a speed of from thirty to forty miles per hour; that just before the collision plaintiff met another car, known as the Helgeson car, and that the defendant was evidently attempting to pass this car when the collision occurred. At any rate it is undisputed that the defendant was traveling at a speed of at least twenty-five miles per hour and that he was well over on the left-hand side of the road when he struck plaintiff's car. It is true that the defendant and some of his witnesses testified that when they examined plaintiff's car after the collision it was standing not far to the north of the center of the traveled track, but that is explained, and practically without dispute, by the fact that when the impact occurred the defendant's car had turned to the right, and, his car being heavier than the plaintiff's car (or at least going at a much greater speed), carried the latter out towards the center of the road. The defendant claimed that at the time of the collision he was blinded by dust and thus rendered unable to see the plaintiff's car. As to the amount of dust the evidence is quite conflicting. One undisputed circumstance, however, tends to indicate that the road was not unusually dusty on that day. Both defendant's witnesses and some of the occupants of the Helgeson car testified that for nearly eight miles defendant's car had been following the Helgeson car at a distance of from 100 to 200 feet. Both cars were returning from a ball game in the latter part of the afternoon. It is quite probable that had the road been unusually dusty the defendant would

not have followed the car ahead at such a short distance, and we think the jury was justified in finding that the existence of whatever dust there was did not excuse the defendant.

These considerations lead us to the conclusion that the trial court could, upon all the evidence, say as a matter of law that the defendant was negligent. That being so, he could not recover upon his counterclaim, and the omission to submit the issues made by it was, if error, harmless.

The defendant also complains of numerous prejudicial remarks made by the trial court during the trial. We have carefully considered the printed case with reference to these exceptions. Their number are many, and it would not aid the legal profession to set them out in detail and to state wherein the court erred in making them. They have, however, left upon the mind of each of us an impression that the trial court at an early stage of the trial made up its mind as to the rights of the parties and frequently thereafter made statements from which the jury could infer that the defendant had no defense. The evidence was such that considerable excuse exists for the formation of such an opinion almost at the inception of the trial. But it is not good practice for a trial court to indicate to the jury by remarks made during the trial his view of the case upon the facts whether or not he intends to submit the issues of fact to the jury. The better practice is to refrain from expressing any opinion as to the probative force of the evidence introduced or as to the probable ultimate right of either party.

As one example of an obviously prejudicial attitude by the court the following part of the record is set forth:

Mr. C. W. Graves (plaintiff's attorney): "In this case an adverse examination of the defendant was taken before Court Commissioner Moen some time prior to the April term of court, anticipating that the case would be tried at

that time.   The examination has never been signed by the defendant, and we ask at this time that unless it is signed or unless his attorney waives signature—"   Court (interrupting): "He can sign it right now."   Mr. Bennett [defendant's attorney]: "We haven't had a chance to read it." Court: "You have had plenty of time; the record shows that.   It doesn't make any difference whether he read it or not.   He can sign the deposition now or his answer will be stricken out."   Mr. Bennett: "The record at this time shows that we did not waive the reading and signing of the deposition.   It was adjourned and held open for that purpose.   We have been ready and waiting from that time to this to have it written up."   Court: "Produce the examination right here now, Mr. Graves."   Mr. Graves: "Mr. Moen has got it." Mr. Bennett: "I haven't seen it."   Mr. Graves: "I will call Mr. Moen and tell him to bring to the court-house the examination of *Mr. Sweger* in the case."   Court: "This sort of delay of waiting to bring a matter of this kind up is intolerable practice."   Mr. Bennett: "I am not to blame for it, I didn't know it had ever been written up."   Court: "Proceed with the case."   Mr. Graves: "The testimony is here now."   Mr. Bennett: "Then I would like to look it over."   Court: "It is for the man who testified to look it over, not for his attorney to suggest to him anything."   Mr. Bennett: "Well I didn't read it."   Court: "It don't make any difference; let him read it."   Mr. Bennett: "May we have one or two minutes to read it?"   Court: "Just let him take it."

An attorney of a party is more than a mere spectator in court.   He has a legal right, where documentary evidence is sought to be introduced, to see what such offered evidence is.   He also has the legal right, where he has taken part in an adverse examination of his client which has later been transcribed into long-hand, to inspect such examination and to see whether it is a document which his client ought to sign, and if there be any defects therein he has the right to point them out and advise his client whether or not he should sign it.

For reasons already stated, namely, that the evidence

shows the defendant negligent as a matter of law and that the jury were justified in finding plaintiff free from contributory negligence, errors of procedure not affecting the question of damages cannot result in a reversal of the judgment.

*By the Court.*—Judgment affirmed.