OLK, Respondent, vs. MARQUARDT, Appellant.

*December 10, 1930—February 10, 1931.*

480

For the appellant there was a brief by *C. G. Cannon* of Appleton, attorney, and *Bender, Trump, McIntyre & Freeman* of Milwaukee of counsel, and oral argument by *Mr. Cannon* and *Mr. Eugene L. McIntyre*.

For the respondent there was a brief by *Benton, Bosser & Tuttrup* of Appleton, and oral argument by *Roger R. Tuttrup*.

FAIRCHILD, J.   The appellant urges the negligence of the plaintiff as a basis for his recovery on his counterclaim and as a defense against respondent's complaint, but in our view of the case the jury was warranted in reaching the conclusion it did.

One approaching a crossing of a highway, proceeding with ordinary care to a point where he can see to his left a sufficient distance to insure him that any one coming from beyond, traveling at a lawful rate of speed, will not interfere with his crossing the highway, may rightfully proceed on the assumption that his right of way will be respected.   If by reason of negligence of another coming from beyond the point looked to he is injured, he, continuing to be free from negligence, is entitled to recover his damages.   *Dahinden v. Milwaukee E. R. & L. Co.* 169 Wis. 1, 171 N. W. 669.

Appellant also claims error because in the verdict there is no question of proximate cause as to plaintiff's case or as to defendant's counterclaims, no question as to plaintiff's contributory negligence as to the plaintiff's case or defendant's counterclaims, or question as to reasonable anticipation.

"Sometimes," says Blackstone, "the jury, for the sake of better information, . . . will find a special verdict. . . . And herein they state the naked facts, as they find them to be proved." Clementson, Special Verdicts, 1. While it may be helpful to use particular questions or certain forms of questions they are not necessary in a special verdict, and if the answers to the questions reveal all essential facts necessary to enable the court to enter the correct judgment protecting the rights of all, the judgment cannot be disturbed because of a failure to use a particular set of questions. The special verdict is the responsibility of the trial court as are the instructions. Counsel made no requests for the submission of any question and do not seem to have entered any objections until after the verdict had been rendered. The trial court fully instructed the jury as to the elements which must be found to exist to constitute negligence on the part of one complained of and of the relation of these elements to each other and the result.

The court framed the questions as to plaintiff's negligence and as to the defendant's negligence so as to require affirmative answers if such issues were to be resolved in favor of the party upon whom the burden of proof rested as a matter of law, and then instructed the jury that every question with the exception of questions pertaining to damages must be answered "Yes" or "No," and that an affirmative answer required proof by a preponderance of the evidence to a degree of reasonable certainty. Nor was the failure of the court to submit the issue raised by the counterclaim to the jury under a set of questions in the special verdict error. The ultimate

facts were found by the jury; by those findings the court was duly informed and the proper judgment could be given. In *Zeitlow v. Sweger,* 179 Wis. 462, 192 N. W. 47, it was suggested that the issues raised by each cause of action might well be submitted separately to the jury, but failure to do so was not determined to be error. Where the questions of the verdict are so framed as to disclose the negligence or lack of negligence of the parties and the effect, if any, of their acts in the sense of cause and effect, the information for which the trial is being conducted is obtained and more is not necessary.

The defendant assigns as error the instruction with relation to speed at intersections where a driver's view is obstructed, where the court said:

"Both drivers in this case for the last fifty feet of their approach to this intersection, and while traveling in the intersection, could not lawfully exceed fifteen miles per hour. It is a verity in the case that this garage stood on the corner and did obstruct the view of both drivers while they were traveling the last fifty feet to the intersection, and therefore it was unlawful for either one of them to travel this last fifty feet, and while in the intersection, at a speed exceeding fifteen miles per hour. Now, they couldn't exceed that speed, but that does not mean that they could drive at the rate of fifteen miles per hour. What was a safe and lawful speed there is a question for the jury to determine, but that couldn't, under any circumstances, for either driver, during those last fifty feet, and while in the intersection, exceed fifteen miles per hour. The statute of this state provides: 'No person shall operate a motor vehicle at a rate of speed greater than is reasonable and proper with due regard to the width, surface, traffic, and use of the highways and rules of the road.' "

The law as to this fifteen-mile limit made it presumptively lawful to drive up to fifteen miles when approaching and traversing an intersection where the view was obstructed. As was said in *Hamus v. Weber,* 199 Wis. 320, 226 N. W.

392, the provision does nothing at all but create a presumption in favor of the driver if his speed be less than fifteen miles an hour. Without the provision the plaintiff would only have the burden of showing the speed negligent without having to overcome any presumptions. While we are inclined to the view that the instruction was technically erroneous, nothing appears to warrant a conclusion that the defendant was prejudiced thereby. Defendant freely conceded that he passed a blind corner at a speed of forty miles an hour where the presumptively lawful speed was fifteen miles an hour, and while he says he did not get the impression of a road coming into the corners from the east, he did see a situation which strongly suggested the presence of highways, and there is evidence indicating his negligence in other particulars which constitutes a cause of the collision.

Plaintiff, as a part of his affirmative case and before defendant had been called to testify, put the official reporter of the municipal court of Outagamie county on the witness stand and had him produce official records by which he offered to prove that the defendant had on August 7th pleaded guilty to a charge of reckless driving in connection with the accident in question. These proceedings were under a county ordinance. The objection was made that the violation of the ordinance not being a crime or misdemeanor is not admissible to impeach the credibility of a witness. This objection was overruled. The purpose of offering this testimony was to show an admission on the part of the defendant amounting at least to acknowledgment of negligence on his part. If the fact is as the record showed, that defendant did make an admission against interest either by statement or by doing something, such as paying a fine and costs, it would be material and competent. The matter of identity of defendant and the one who paid the fine was not clearly established at the time the reporter was on the witness stand, but there is no serious dispute over this, and inasmuch as the

defendant very frankly admits driving up to and past this blind corner at the rate of forty miles per hour, there was no prejudicial error in receiving the record. It is not necessary to give further consideration of errors assigned by reason of admission of evidence. *Birchard v. Booth,* 4 Wis. 67; *Collins v. State,* 115 Wis. 596, 92 N. W. 266.

Further complaint as to the instructions given by the court is not well founded. The jury allowed $7,000 damages and the court in its instructions told them:

"If the greater weight of the evidence satisfies you that it is reasonably certain that at any time hereafter, and as a natural and probable consequence of the collision, Mr. Olk will experience pain and suffering in the future, or will suffer in earning capacity, then reasonable compensation therefor should be included in your award of damages. In fixing your award of damages you should also consider the fact that Mr. Olk has a permanent disfigurement of his face. To what extent it will disfigure him in the future is for you to determine, and you should make such allowance for any permanent disfigurement as the weight of the evidence shows to a reasonable certainty and in connection therewith. You should consider any feeling of humiliation that this disfigurement may cause Mr. Olk in the future."

There is testimony that plaintiff at present suffers from a seventy-five per cent. loss of vision of his right eye and almost total loss of hearing in the right ear; that there are no signs of improvement and that these afflictions are the result of the accident. The plaintiff is at present earning as much as he earned before the accident. He suffered a fracture of the right cheek bone so involving certain nerves as to result in some lack of ability to open the mouth, a misalignment of the upper and lower jaws. A serious impairment of vision and hearing must necessarily tend to decrease his efficiency and must have some effect upon his earning capacity.

Plaintiff was physically present before the jury, his facial deformity was exhibited, and while the amount is large a jury fixed it, and the trial court, who was more familiar with the appearance of the physical results of the accident than the record permits us to be, approved the verdict. The instructions with relation to it do not seem to be improper.

The court informed the jury that if they were unable to unanimously agree there was a provision for a five-sixths verdict. We agree that the instruction as given required ten or more jurors to agree upon negative as well as affirmative answers, but the court had previously instructed the jury that all questions must be answered in the affirmative or negative, and that the burden of proof rested upon the party asserting the affirmative. This was followed by an instruction that if ten or more jurors answered the first subdivision of question (1) in the affirmative, the same ten jurors must thenceforth agree on every answer to every remaining question in the verdict. The first subsection of question (1) was answered in the affirmative by all twelve jurors. The form of instruction used then logically placed upon the plaintiff the burden of obtaining favorable answers by the same ten jurors in all remaining questions.

Under the circumstances presented by this record it does not seem possible that error could have affected the defendant. Every question of the verdict was answered in favor of the plaintiff and the jury was unanimous. *Bentson v. Brown,* 186 Wis. 629, 203 N. W. 380.

*By the Court.*—Judgment affirmed.