FIELDS, Respondent, v. CREEK and another, Appellants.

*October 31—November 26, 1963.*

564

For the appellants there were briefs by *Wickhem, Consigny & Sedor* of Janesville, and oral argument by *John C. Wickhem.*

For the respondent there was a brief by *D. W. Krueger* and *Geffs, Geffs, Block & Geffs,* all of Janesville, and oral argument by *Jacob Geffs.*

GORDON, J.

## 1. *The Negligence of the Plaintiff.*

Although there were two dissents, the jury found that the plaintiff was free from negligence. We have said that a finding will not be disturbed " 'if there is any credible evidence which under any reasonable view fairly admits of an inference that supports the jury's finding.' " *Bleyer v. Gross* (1963), 19 Wis. (2d) 305, 307, 120 N. W. (2d) 156; *Van Galder v. Snyder* (1948), 254 Wis. 120, 123, 35 N. W. (2d) 187. Our examination of the record compels the conclusion that there is credible evidence to support a finding that there was no negligence on the part of the plaintiff.

The jury was presented with conflicting evidence as to speed, and it was entitled to believe that Fields was in fact traveling at a rate of speed less than ten miles per hour. Although he did not stop as he emerged onto Woodman road, such failure to stop was not violative of sec. 346.47 (1), Stats., since that statutory section applies only where there is a sidewalk or sidewalk area to be crossed. *Mayville v. Hart* (1961), 14 Wis. (2d) 292, 295, 110 N. W. (2d) 923.

The jury might well have been impressed with the physical structure of the locale where the accident happened. The two

cars collided near the end of a dead-end street. Thus, there would be no occasion for Fields to anticipate that any vehicle approaching the driveway entrance from Woodman road would be operating on the west side of such road. Also, the driveway from which Fields was emerging had room for two vehicles, so that anyone approaching from the south would have had room to turn into the driveway irrespective of the fact that Fields' automobile was emerging at the same time.

Under these physical circumstances, the jury could reasonably have concluded that Fields' speed and lookout were non-negligent. The fact that Fields' car skidded is not necessarily evidence of negligence. *Poole v. State Farm Mut. Automobile Ins. Co.* (1959), 7 Wis. (2d) 65, 68, 95 N. W. (2d) 799.

On the other hand, the jury could reasonably find that the defendant was negligent in driving on the wrong side of the road under sec. 346.32, Stats., and in making a right turn from an improper portion of the roadway under sec. 346.31 (2). Creek's plea of guilty to a charge of operating his automobile on the wrong side of the road was probably a persuasive evidentiary factor to the jury.

While Creek testified that he was going 12 to 15 miles per hour, the jury was not obligated to accept this testimony in view of the 31 feet of skid marks which were left by Creek's automobile. This may have been aggravated in the eyes of the jury by the evidence which was presented suggesting that after the accident Creek attempted to obliterate a portion of the skid marks.

Ordinarily we might expect a jury to find some small degree of negligence on the part of a driver in Fields' circumstances. However, upon this record there is credible evidence to support a finding of 100 percent of the negligence on Creek. Upon the conflicting evidence which was advanced, the question was to be resolved by the jury. *Heinecke*

v. *Hardware Mut. Casualty Co.* (1953), 264 Wis. 89, 94, 58 N. W. (2d) 442.

### 2. *Statements of Counsel During Trial.*

The defendants' counsel urges that on 19 different occasions during the course of the trial the plaintiff's counsel made remarks with the intention of improperly influencing the jury to the advantage of the plaintiff. We have examined each of the alleged incidents of "unlawyerlike conduct" and find appellants' contention in this regard devoid of merit.

### 3. *Improper Rulings on Evidence.*

The defendants contend that it was error for the trial court to refuse to admit into evidence at the trial an admission against interest contained in the following question asked of Fields at an adverse examination:

"*Q.* Did you feel that an accident would have happened had you been able to stop your car without skidding on the ice? *A.* If I had been able to stop it, it wouldn't have happened."

This matter was debated in the absence of the jury. Plaintiff's counsel objected with the following observation:

"It's an 'if' question. If he hadn't started out that morning, there would have been no accident."

The trial court sustained the objection. Defendants' counsel vigorously opposed the ruling, stating:

"Let us state on the record we believe we will be materially prejudiced by the Court's ruling in this respect, because the statement offered is on a very material portion of the lawsuit. . . . We want the Court to know at this moment

we regard this ruling as a very important one, and to give the Court an opportunity to correct the ruling at a later time, should the Court determine its original ruling is not correct. Will the Court instruct the jury he is reserving ruling?"

The court responded: "I will let my ruling stand."

We not only agree with the trial court, but we consider that it would have been error to have overruled the plaintiff's objection. The question assumed the existence of a material fact which had not been proved and was an improper question whether asked in direct examination, cross-examination, or at a previous adverse examination. See McCormick, Evidence (hornbook series), pp. 11, 12, sec. 7; Anno. 100 A. L. R. 1067.

The defendants also maintain that it was prejudicial error for the plaintiff to have brought out the fact that the plaintiff was insured by the same company which insured the defendants. The defendants' argument is that since the plaintiff did not have collision insurance on his own automobile, any reference to his own insurer was irrelevant. In the absence of a counterclaim the identity of plaintiff's insurer would normally be immaterial. This would be true even though it was the same insurer who carried the liability on the defendant's automobile and was itself a defendant in the action.

However, in the instant case, the defendants' counsel opened the door by interrogating the plaintiff on the question whether the plaintiff had signed a written statement "for your insurance company, in which you stated that before the accident you had been going 15 miles an hour." This cross-examination of the plaintiff would suggest that plaintiff had given such statement to a friendly representative, since it was his "own" insurance company.

This interrogation having occurred at the instance of defendants' counsel, it became entirely proper that plaintiff's counsel should subsequently be permitted to ask his client to

identify the name of his insurance company in order to dispel the connotation that there was an extra quality of credence to the contents of the statement because it was given to his "own" carrier. The statement was in fact taken by a hostile source, and plaintiff's counsel was warranted in establishing such fact.

### 4. *Final Arguments to the Jury.*

We have set forth that portion of the final argument to the jury made by plaintiff's counsel upon which the defendants base their motion for a new trial. In the eyes of the defendants' counsel, the summing up was "calculated to induce the jury to ignore the evidence presented and render a verdict for plaintiff founded on sympathy."

The content of the arguments by counsel to the jury is a matter resting in the discretion of the trial court. It is only when the trial court fails in its responsibility that this court will intrude. *Masterson v. Chicago & N. W. R. Co.* (1899), 102 Wis. 571, 78 N. W. 757. It is difficult to lay down precise standards which will successfully separate fair argument from unfair argument. We are not prepared to strike down all colorful, forensic thrusts before the jury. Oral argument to the jury need not be confined to the sterile reiteration of the testimony which was presented. Counsel have the right to analyze and exhort. As long ago as 1878, this court recognized that counsel in argument should be given "the very fullest freedom of speech." *Brown v. Swineford* (1878), 44 Wis. 282, 293.

There is a point when enthusiastic advocacy becomes an appeal to prejudice. It is the burden of the trial court to make sure the arguments do not exceed the bounds of fairness. See *DeRousseau v. Chicago, St. P., M. & O. R. Co.* (1949), 256 Wis. 19, 27, 39 N. W. (2d) 764; *Pecor v. Home Indemnity Co.* (1940), 234 Wis. 407, 418, 291 N. W

313; *Markowitz v. Milwaukee E. R. & L. Co.* (1939), 230 Wis. 312, 320, 284 N. W. 31. *Cf. Halsted v. Kosnar* (1963), 18 Wis. (2d) 348, 118 N. W. (2d) 864. In the instant case, the trial court did not see fit to criticize the argument of the plaintiff's counsel, and we are not persuaded that the trial court was clearly in error in this regard.

### 5. *New Trial in the Interests of Justice.*

The jury assessed damages for personal injuries in the sum of $7,500. Fields was in the hospital from February 12, 1962, until March 9, 1962, being in traction part of the time and having been subjected to a myelogram and an operation for a herniated disc. He was not able to return to work until May 7, 1962. We conclude that the damages are not excessive.

Some of Fields' injuries may have been sustained as a result of his activity in attempting to free the two cars after the impact. This circumstance does not constitute a valid reason for considering the damages excessive. In *Hatch v. Smail* (1946), 249 Wis. 183, 188, 23 N. W. (2d) 460, we observed that an intervening act of a human which is a normal response to the stimulus of a situation created by another's negligence is not a superseding cause of the injury. The trial court's instructions on this matter were entirely proper.

We find that the parties were afforded a full and fair trial and that there is no occasion for our exercising our discretion to order a new trial in the interests of justice pursuant to sec. 251.09, Stats. There is applicable to the instant case this court's summary of the situation in *Roeske v. Schmitt* (1954), 266 Wis. 557, 574, 64 N. W. (2d) 394:

"As we have pointed out, there is no accumulation of error. The trial, a lengthy one, was conducted by able counsel, each of whom was, of course, seeking findings favorable to his

client and each of whom appears to have been willing to let the chips fall where they might and upon either or any of his adversaries. We do not consider that a new trial is required."

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting*). I respectfully dissent. The quoted portion of the closing argument of plaintiff's counsel was an appeal to passion and prejudice which should not be countenanced by this court. The fact that defendant's counsel did not at the time enter a formal objection, or that the trial court did not on its own motion warn counsel that the argument was improper and instruct the jury to disregard it, is immaterial on the issue of whether this court should direct a new trial in the interest of justice. The jury's finding of no causal negligence on the part of plaintiff, while it cannot be set aside on the ground that there is no credible evidence to support it, is certainly against the great weight of the evidence. Therefore, I feel that the improper argument probably did influence the jury in making this finding. I would exercise our discretion under sec. 251.09, Stats., and order a new trial in the interest of justice.

I am authorized to state that Mr. Justice HALLOWS and Mr. Justice WILKIE concur in this dissent.